PD-0803-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/1/2015 9:14:10 AM
Accepted 7/1/2015 3:41:11 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

_____

## CASE NO.

## 13-13-00416-CR

_____

## MICHAEL PATRICK KENNEDY,
### Defendant-Appellant

### v.

## STATE OF TEXAS,
### Plaintiff-Appellee.

_____

## PETITION FOR DISCRETIONARY REVIEW FROM THE JUDGMENT OF THE TEXAS THIRTEENTH COURT OF APPEALS

_____

## PETITION OF DEFENDANT-APPELLANT

_____

FILED IN
COURT OF CRIMINAL APPEALS

July 1, 2015

ABEL ACOSTA, CLERK

**F. CLINTON BRODEN**
**TX Bar No. 24001495**
**Broden, Mickelsen, Helms & Snipes**
**2600 State Street**
**Dallas, Texas 75204**
**(214) 720-9552**
**(214) 720-9594(facsimile)**

**Attorney for Defendant-Appellant**
**Michael Patrick Kennedy**

## IDENTITY OF PARTIES AND COUNSEL

**Plaintiff-Appellee:** State of Texas

**Trial Counsel:** Chari Kelly
Laura B. Bates
Comal County District Attorney's Office
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130

**Appellate Counsel:** Chari Kelly
Comal County District Attorney's Office
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130

**Trial Judge:** Honorable Jack Robison

**Defendant-Appellant:** Michael Patrick Kennedy

**Trial Counsel:** F. Clinton Broden
Broden, Mickelsen, Helms & Snipes LLP
2600 State Street
Dallas, Texas 75204

Anthony B Cantrell
1100 Soledad, Suite 1200
San Antonio, Texas 78205

Patrick B. Moran
1100 Soledad, Suite 1200
San Antonio, Texas 78205

**Appellate Counsel:** F. Clinton Broden
Broden, Mickelsen, Helms & Snipes LLP
2600 State Street
Dallas, Texas 75204

**Appellate Judges:** Chief Justice Rogelio Valdez
Justice Nelda V. Rodriguez
Justice Dori Contreras Garza

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL..................................................................ii

TABLE OF CONTENTS............................................................................................iii

INDEX OF AUTHORITIES.......................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT..................................................1

STATEMENT OF THE CASE...................................................................................2

STATEMENT OF PROCEDURAL HISTORY.........................................................4

QUESTIONS PRESENTED FOR REVIEW.............................................................6

ARGUMENT.............................................................................................................7

    I. The Court of Appeals Erred in Holding that it was Harmless Error not to Define "Provocation" in the Jury Charge Where the Entire Case Revolved Around the Question of Whether Mr. Kennedy Provoked Officer Kunz into Shooting Him so that he Could Claim Self-Defense for Firing Back at Office Kunz..........................................................................................................................7

        A. Factual Background.........................................................................8

        B. Argument.......................................................................................11

            1. Provocation Instruction...........................................................11

            2. Whether Mr. Kennedy Provoked the Attack was What this Case was All about.................................................................................14

    II. This Court Should Resolve the Conflict Among the Appeal Courts as to Whether Hospital Records that Were Provided and Obtained in Violation of Law, to Wit: the Health Insurance Portability and Accountability Act of 1996

("HIPPA"), Should be Suppressed.................................................................16

PRAYER....................................................................................................20

CERTIFICATE OF SERVICE.................................................................21

CERTIFICATE OF COMPLIANCE.........................................................22

# INDEX OF AUTHORITIES

**Page**

## Cases

*Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1985)........................................14

*Cherry v. State,* 2014 WL 265844 (Tex. App. Houston [1ˢᵗ] 2014)..............................13

*Hudson v. State,* 179 S.W.3d 731 (Tex. App. - Houston [14ᵗʰ] 2009).........................13

*Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547 (Tex. 1981).............................19

*Kennedy v. State,* 338 S.W.3d 84 (Tex. App. - Austin 2011)........................................4

*Kennedy v. State,* 2015 WL 3637917 (Tex. App. - Corpus Christi June 11, 2015).......5

*Kennemur v. State,* 280 S.W.3d 305 (Tex. App. - Amarillo 2008).............................17

*Middleton v. State,* 125 S.W.3d 450 (Tex. Crim. App. 2003).....................................13

*Murray v. State,* 245 S.W.3d 37 (Tex. App. - Austin 2007)........................................17

*Smith v. State,* 956 S.W.2d 509 (Tex. Crim. App. 1998).....................................12, 13

*State v. Huse,* 2014 WL 931265 (Tex. App. - Amarillo 2014)...................................17

*State v. Jewell,* 2013 WL 387800 (Tex. App. - Waco 2013).......................................17

*United States v. Zamora,* 408 F. Supp.2d 295 (S.D. Tex. 2006).................................18

## Other Authorities

45 CFR § 164.512(F)(1).................................................................................................18

Health Insurance Portability and Accountability Act of 1996 ("HIPPA")..... *in passim*

Tex. R. Crim. P. Art. 38.23.......................................................................................17, 19

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Kennedy submits that oral argument would be helpful in allowing the Court to properly apply the law to the facts of the case.

## STATEMENT OF THE CASE

This case involved a shooting incident between Michael Kennedy and Officer Richard Kunz that occurred after Officer Kunz stopped Mr. Kennedy for speeding. (RR III:37-39). Officer Kunz testified that, when he approached Mr. Kennedy's vehicle, Mr. Kennedy pointed a barrel of a gun at him. (RR III:49-50) According to Officer Kunz, he then retreated to his vehicle and Mr. Kennedy fired on him with a handgun as he was retreating. (RR III50-51) Officer Kunz testified that it was only *after* being fired upon that he returned fire on Mr. Kennedy and he fired approximately sixteen shots at Mr. Kennedy. (RR III:54, 69)

At trial, the defense presented expert testimony from three expert witnesses. The first and second expert testified in the fields of acoustics, audio, and video review and both concluded that, in fact, a video of the incident revealed that it was Officer Kunz who fired the first shot. (RR IV:215, 222-26; RR V:36, 51)

The third expert, Dennis McKnight, testified as an expert in the field of law enforcement. He testified that, even assuming that Mr. Kennedy had displayed a gun while Officer Kunz was at Mr. Kennedy's driver's door as Officer Kunz claimed, once Officer Kunz retreated there was no immediate threat and he should not have fired his weapon at Mr. Kennedy. (RR V:121) Mr. McKnight also testified that it is permissible for a citizen to use self-defense against a police officer. (RRV:143-44)

He concluded that, in his opinion, Mr. Kennedy was acting in self-defense in returning Officer Kunz's fire.  (RR V:157)

## STATEMENT OF PROCEDURAL HISTORY

On January 9, 2006, as part of a plea agreement, Michael Patrick Kennedy pleaded guilty to Information charging him with Aggravated Assault of a Public Servant in Trial Court Case Number CR 2006-016. (Supp. I CR(2006-016):11-18)[1] His conviction was later reversed on appeal. *Kennedy v. State*, 338 S.W.3d 84 (Tex. App.–Austin 2011).

Upon remand, the parties continued to file pleadings and notices in Case Number CR 2006-016. Nevertheless, on May 9, 2012, Mr. Kennedy was charged by Indictment in Trial Court Case Number CR 2012-240 with Attempted Capital Murder and Aggravated Assault of a Public Servant. (CR 6-7) All pleadings in CR 2006-016 were adopted into CR 2012-240. (Supp I CR(2012-240):8) (PT 8/27/12:23)

A trial was held in CR 2012-240 on June 10, 2013-June 17, 2013. The jury found Mr. Kennedy guilty of Attempted Capital Murder. (CR 43) The jury imposed a sentence of sixty-five years imprisonment and no fine. (CR 49) The court imposed a sentence in accordance with the jury verdict. (CR 65-67)

On direct appeal, the Thirteenth Court of Appeals upheld the judgment and

---

[1]References to the Clerk's Record ("CR") refer to the volume number:page number. References to the Supplemental Clerk's Record ("CR") refer to the volume number (trial court case number):page number. References to the Reporter's Record ("RR") of the trial refer to the volume number:page number. References to the Reporters Record for pretrial hearings ("PT") refer to the date:page number.

sentence in the case. *See Kennedy v. State*, 2015 WL 3637917 (Tex. App.-Corpus

Christi June 11, 2015) (Attached hereto in Appendix).

## QUESTIONS PRESENTED FOR REVIEW

I. Did the Court of Appeals err in holding that it was harmless error not to define "provocation" in the jury charge where the entire case revolved around the question of whether the defendant provoked a police officer into shooting him so that he could claim self-defense for firing back at the police officer?

II. Should this Court resolve the conflict among the appeal courts as to whether hospital records that were provided and obtained in violation of law, to wit: the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), should be suppressed?

**ARGUMENT**

**I. THE COURT OF APPEALS ERRED IN HOLDING THAT IT WAS HARMLESS ERROR NOT TO DEFINE "PROVOCATION" IN THE JURY CHARGE WHERE THE ENTIRE CASE REVOLVED AROUND THE QUESTION OF WHETHER MR. KENNEDY PROVOKED OFFICER KUNZ INTO SHOOTING HIM SO THAT HE COULD CLAIM SELF-DEFENSE FOR FIRING BACK AT OFFICER KUNZ**

This entire case focused on one question, did Mr. Kennedy act in self-defense when he fired upon Officer Kunz or did he do something to provoke Officer Kunz to fire on him so that he could claim self-defense for firing back at Officer Kunz? Mr. Kennedy argued that Officer Kunz fired on him first and that, when he returned fire, he was merely defending himself. (RR VI:61-65) The State repeatedly argued that Mr. Kennedy pointed a gun at Officer Kunz first and thus it was irrelevant whether Officer Kunz fired first because Mr. Kennedy "provoked" the attack.

> [T]his man provoked the situation, that is he is the one who started it when he pointed that gun at Officer Kunz.
>
> * * * *
>
> [W]ho shot first in this case is about as important as what type of car the defendant was driving that night. Okay? *It is not important because the moment that the defendant picked up a firearm and pointed it at a police officer, he forfeited the right to claim self-defense.*
>
> * * * *
>
> When you go back there, I ask that you find the defendant guilty of attempted capital murder *because when you pull a gun on a police*

7

*officer, you do not get to claim self-defense. You have provoked the event.*

(RR VI 55, 79, 95 emphasis added)

## A. Factual Background

Officer Kunz stopped Mr. Kennedy for speeding. (RRIII:37-39). According to Officer Kunz and as confirmed by a video of the traffic stop (State's Exhibit 1), Officer Kunz approached Mr. Kennedy's car, informed Mr. Kennedy why he had stopped him, and asked Mr. Kennedy for his license and proof of insurance. (RR III:47-49) Officer Kunz testified that, although it appeared that Mr. Kennedy was reaching for his driver's license and insurance, Mr. Kennedy instead pointed a barrel of a gun at him. (RR III:49-50)

Officer Kunz retreated to his vehicle and, according to Officer Kunz, Mr. Kennedy fired on him with a handgun as he was retreating. (RR III50-51) Officer Kunz then radioed his dispatcher that there was a man with a gun and ordered Mr. Kennedy to drop his weapon.[2] Officer Kunz testified that Mr. Kennedy continued firing at him with the handgun and then a rifle and that Mr. Kennedy fired numerous shots. (RR III:51-53)[3]

---

[2]Curiously, although Officer Kunz claimed Mr. Kennedy fired upon him *before* he radioed his dispatcher, he never told the dispatcher that he was fired upon.

[3]It was later determined that Mr. Kennedy shot approximately ten times with a nine millimeter handgun and approximately thirty times with an AK-47 rifle and that there were forty-

According to Officer Kunz, it was only after being fired upon that he returned fire on Mr. Kennedy and he fired approximately sixteen shots at Mr. Kennedy. (RR III:54, 69) Officer Kunz was adamant that he did not fire on Mr. Kennedy until Mr. Kennedy fired upon him. (RR III:68) Upon the arrival of assistance, a wounded Mr. Kennedy was pulled from his vehicle. (RR III:56) Although Mr. Kennedy had access to several weapons at the time he was pulled from his vehicle by other officers, he did not fire on any of them. (RR IV:121, 180) It was determined that Mr. Kennedy had been shot several times, all in the back, by Officer Kunz. (RRIV:143-44)

That same night, shortly following the incident, Officer Kunz consulted with an attorney. (RR III71) Officer Kunz agreed to give a written statement to officers with the Texas Rangers provided that his lawyer could first review it. (RR III:72) During the interview with the Rangers, the Rangers roll played the incident with Officer Kunz to "help [him] recall the events." (RR III:74-75) In the statement he gave the Rangers, Officer Kunz claimed that, after Mr. Kennedy allegedly pointed the gun at him, he ran and did not stop until he reached the rear of his patrol car. (RR III:76)[4] In his statement and consistent with his trial testimony, Officer Kunz also

---

five bullet holes in Officer Kunz's patrol car. (RRIII:233, 263)

[4]In fact, the video of the incident showed Officer Kunz initially firing at Mr. Kennedy from an area between the back of Mr. Kennedy's car and the *front* of Officer Kunz's patrol car. (State's Exhibit 1)

9

claimed Mr. Kennedy fired upon him *before* he radioed his dispatcher even though he only told his dispatcher that there was a "man with a gun." (RR III:77) Officer Kunz also claimed in this statement that he did not even draw his gun until *after* Mr. Kennedy had fired upon him and until *after* he called his dispatcher even though these claims would later be shown by the video of the incident to be false. (RRIII:77)

The defense case primarily consisted of the testimony from three expert witnesses. The first expert was Dr. Al Yonovitz who was qualified as an expert in the area of acoustics. (RR IV:203) Dr. Yonovitz conducted an audio analysis of State's Exhibit 1- the video of the roadside stop and shooting. Based upon a spectrogram analysis of the video performed by Dr. Yonovitz, he testified "that it is unequivocally clear that Officer Kunz fired the first shot" and that Mr. Kennedy only fired after being fired upon. (RR IV:215, 222-26) In addition, Dr. Yonovitz was able to identify a portion of the video in which a person exclaimed "I got hit," prior to Mr. Kennedy firing at Officer Kunz. (RR IV:235-36)

The next expert was Barry Dickey. Mr. Dickey was an expert in forensic audio and video review. (RR V:30) Mr. Dickey prepared various slow motion segments and extracts of State's Exhibit 1. (RR V36-37) Based upon his review of the video in the case, Mr. Dickey concluded that "[a]ll results suggest the officer fired first." (RR V:36, 51)

Dennis McKnight was offered as an expert in the field of law enforcement and testified to an extensive background in that field. (RR V105-12) Mr. McKnight testified that, although a police officer may use reasonable force to protect themselves from serious injury or death, the further the officer is away from the threat the less force is justified. (RR V:118-19) *He also testified that, even assuming that Mr. Kennedy had displayed a gun while Officer Kunz was at Mr. Kennedy's driver's door as Officer Kunz claimed, once Officer Kunz retreated there was no immediate threat and he should not have fired his weapon at Mr. Kennedy.* (RR V:121) Mr. McKnight opined that the first shot by Officer Kunz traveled through Mr. Kennedy's back window and hit him in the back and, at the time Officer Kunz fired that shot, there was no immediate need to use deadly force against Mr. Kennedy. (RR V:137) Mr. McKnight also testified that it is permissible for a citizen to use self-defense against a police officer. (RR V:143-44) He concluded that, in his opinion, Mr. Kennedy was acting in self-defense in returning Officer Kunz's fire. (RR V:157)

## B. Argument

### 1. Provocation Instruction

In connection with Mr. Kennedy's request that the jury be instructed on self-defense, the State requested that the jury be given a "provocation" instruction because, in its view, Mr. Kennedy provoked Officer Kunz into shooting him

11

regardless of who shot first.  (RR VI:7)

> Mr. Kennedy then requested that the trial court define the concept of provocation in the jury charge and requested that the jury be charged:  Provocation is defined as, one, that the defendant did some act or used some words which provoked the act on him...Two, that such acts or words were reasonably calculated to provoke the attack, and, three, that the act was done or words were used for purpose and with the intent that the defendant would have a pretext for inflicting harm upon others.

(RR VI:20-21)[5]  Mr. Kennedy explained that, without the definition, the jury might believe that he acted recklessly in allegedly pointing a gun at Officer Kunz without having intended to cause a pretext for inflicting harm on Officer Kunz or others and still be required to find him guilty under the court's instructions.  (RR VI:12)  The Court responded that the State could argue that Mr. Kennedy allegedly pointed the gun at Officer Kunz to create a "suicide by cop" situation and denied Mr. Kennedy's requested instruction.  (RR VI:12, 21)

Without actually deciding the issue, the Court of Appeals appears to have agreed with Mr. Kennedy that "provocation" should have been defined in the jury charge.  *See* Opinion at 13-16.  In this regard the Court of Appeals was correct as this Court has held that terms which have a technical legal meaning may need to be defined in the jury charge.  *Middleton v. State,* 125 S.W.3d 450, 454 (Tex. Crim. App.

---

[5]Mr. Kennedy explained that he took the definition of provocation directly from the Court of Criminal Appeals' decision in *Smith v. State*, 965 S.W.2d 509 (Tex. Crim. App. 1998) (RR VI:19)

2003) "This is particularly true when there is a risk that the jurors may arbitrarily apply their own personal definitions of the term or where a definition of the term is required to assure a fair understanding of the evidence." *Id*. (citations omitted). Likewise, "a trial court's charge should contain a definition of any legal phrase that the jury necessarily will use in properly resolving that issue. *Hudson v. State*, 179 S.W.3d 731, 739 (Tex. App.–Houst [14th] 2009).

The dictionary definition of the word "provoke" is, *inter. alia.,* "to provide the needed stimulus for."[6]  Nevertheless, "[t]he phrase 'provoking the difficulty' *is a legal term of art,...*" *Smith*, 965 S.W.2d at 512 (emphasis added).  The rule of law is that if the defendant provoked another to make an attack on him, so that the defendant would have a pretext for killing the other under the guise of self-defense, the defendant forfeits his right of self-defense." *Id*.  Indeed, "[e]ven if a defendant acts wrongly and provokes an attack by another, he will not lose his right to self-defense if he did 'no[t] inten[d] that the act would have such an effect as a part of a larger plan' of harming the victim." *Cherry v. State*, 2014 WL 265844 *5 (Tex. App. Hous. [1st] 2014) [unpublished], *citing, Smith*, 965 S.W.2d at 518.

Given this legal term of art, "provocation" should have been defined for the jury in this case.  Whereas, a non-legal, dictionary application of the term

---

[6]www.merriam-webster.com/dictionary/provoke

"provocation" could lead a juror to simply asking whether Mr. Kennedy "provided the stimulus for" Officer Kunz to fire upon him first, the "legal term of art" required much more. It required a jury to conclude, beyond a reasonable doubt, that, even if Mr. Kennedy did point a gun at Officer Kunz when Officer Kunz was besides his car window, Mr. Kennedy did so with the intent to have a pretext for harming Officer Kunz.

### 2. Whether Mr. Kennedy Provoked the Attack Was What This Case Was All About.

The Court of Appeals acknowledged that, under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985), Mr. Kennedy must show "no more than that there [was] *some* harm" to him from a jury charge error. It also noted that, because of the faulty charge in this case, "the jury's ability to conclude that Kennedy's actions were justified as self-defense was restricted." Nevertheless, the Court of Appeals concluded that there was "overwhelming" evidence that Mr. Kennedy "provoked the encounter." *See* Opinion at 17. At the same time, the Court of Appeals appears to suggest that the evidence would not be so "overwhelming" if there was evidence "specifically supporting a suicide-by-cop theory." *Id*. With due respect to the Court of Appeals it is difficult to follow that logic given the facts of the case.

What was the "overwhelming" evidence that Mr. Kennedy took actions to

14

provoke Officer Kunz to fire on him *so that he could claim self-defense for firing back at Officer Kunz*? It was established from two unimpeached expert witnesses that Officer Kunz fired the first shot. Assuming that to be the case, then the only "overwhelming evidence" the Court of Appeals could be pointing to would be evidence that Mr. Kennedy allegedly pointed a gun at Officer Kunz initially. Putting aside for the moment that the *only* evidence of the gun pointing was Officer Kunz's testimony, the Court of Appeals' logic is exactly the problem with the faulty jury instruction.

The jury could very well have accepted the State's repeated arguments that, simply because the evidence allegedly established that Mr. Kennedy pointed a gun at Officer Kunz, Mr. Kennedy provided the "stimulus" for Officer Kunz firing upon him. Nevertheless, this does not answer the question of whether Mr. Kennedy pulled the gun *in order* to have a "pretext" of firing upon Officer Kunz when Officer Kunz fired upon him. Indeed, in light of the State's repeated argument that:

> (a) Mr. Kennedy "is the one who *provoked* the situation, that is he is the one who *started* it when he pointed that gun at Officer Kunz," and;

> (b) "It is not important [who shot first] because the moment that the defendant picked up a firearm and pointed it at a police officer, he forfeited the right to claim self-defense."[7]

---

[7](RR VI 55, 79 emphasis added)

15

juxtaposed against Mr. Kennedy's argument that he only shot after being fired upon by Officer Kunz, it is impossible to see how the trial court's failure to define "provocation" did not cause Mr. Kennedy "some harm."

Even more curious is that the Court of Appeals appeared to suggest that Mr. Kennedy *would* have suffered some harm if a reasonable juror could have believed this was a "suicide by cop." Nevertheless, the Court of Appeals concluded that there was no "specific" evidence of this. First, a reasonable juror could have concluded that it was "suicide by cop" simply by concluding that Mr. Kennedy did point the gun at Officer Kunz first but that Officer Kunz then shot at Mr. Kennedy first. Second, the trial judge (who is presumably reasonable) stated that he himself believed this was likely a case of suicide by cop. ("I think there is -- that could be a well-argued theory of this case. (RR VI:13))

## II. THIS COURT SHOULD RESOLVE THE CONFLICT AMONG THE APPEAL COURTS AS TO WHETHER HOSPITAL RECORDS THAT WERE PROVIDED AND OBTAINED IN VIOLATION OF LAW, TO WIT: THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 ("HIPAA"), SHOULD BE SUPPRESSED

Over objection by the defense, the State introduced Mr. Kennedy's medical records as State's Exhibit 77 which it secured through a trial subpoena. The defense objected that these records were provided and obtained in violation of HIPAA. (RR

16

IV:135).[8] The records were obtained by the District Attorney's investigator faxing a subpoena to San Antonio Military Medical Center (a.k.a. Brooke Army Medical Center ("BAMC")) on April 18, 2013 and requesting that it fax him Mr. Kennedy's medical records along with a custodian affidavit. (Supp. I CR(2012-240):19-23)

The courts of appeals are split on whether medical records obtained in violation of HIPAA are suppressible. *Compare State v. Jewell*, 2013 WL 387800 (Tex. App.–Waco 2013) (upholding suppression) with *State v. Huse*, 2014 WL 931265 (Tex. App–Amarillo 2014) (HIPAA violation does not support suppression); *Kennemur v. State*, 280 S.W.3d 305 (Tex. App–Amarillo 2008) (same); *Murray v. State*, 245 S.W.3d 37, 41-42 (Tex. App.-Austin 2007) (same).

HIPAA provides that a covered entity may disclose protected health information:

> (i) As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws

---

[8]When questioned whether this was an evidentiary objection, defense counsel explained:

It is an evidentiary objection in the sense, Your Honor, no evidence can be admitted that is obtained in violation of –

and then was cut off by the trial court. (RR IV:135). In context, however, it is clear that counsel was arguing that evidence produced or obtained in violation of law is inadmissible as an evidentiary matter under Tex. R. Crim. P. Art. 38.23. Likewise, the trial court understood that Mr. Kennedy was arguing that records obtained in violation of HIPAA were inadmissible at trial.

17

subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section; or

(ii) In compliance with and as limited by the relevant requirements of:

> (A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;

> (B) A grand jury subpoena; or

> (C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:

>> (1) The information sought is relevant and material to a legitimate law enforcement inquiry;

>> (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and

>> (3) De-identified information could not reasonably be used.

45 CFR § 164.512(F)(1).

The Court of Appeals appeared to agree that Section (ii)(a) does not apply because the trial subpoena in this case was not issued by a "judicial offer" but a instead was issued by a court clerk. *See United States v. Zamora,* 408 F.Supp.2d 295, 298 (S.D. Tex. 2006). Likewise, Section (ii)(b) does not apply because the records were not obtained by a grand jury subpoena. Nevertheless, the Court of

18

Appeals took the position that Section (i) or (ii)(c) apply to allow the release of Mr. Kennedy's pretrial medical records. *See* Opinion at 7-8.

The Court of Appeals' interpretation- that Section (i) allows a subpoena issued by a clerk to permit HIPAA disclosures- would render Section (ii)(A), which requires that a HIPAA subpoena actually be issued by a "judicial officer," completely meaningless. Moreover, it appears Section (ii)(c) is limited to administrative subpoenas and, again, such a broad interpretation of Section (ii)(c) would render Section (ii)(A) useless and meaningless.[9]   Simply put, the trial subpoena issued in this case could not support the release of Mr. Kennedy's private medical records under HIPAA.

In sum, this Court should determine whether hospital records that are obtained in violation of HIPAA are subject to suppression and, at the same time, resolve the conflict among the courts of appeals.[10]

_____

[9]*See, e.g., Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex.1981) (A cardinal rule of statutory construction is that the legislature is not presumed to have done a useless or meaningless act).

[10]Here, the State made repeated use of Mr. Kennedy's medical records at both the guilt-innocence phase and, especially, in the penalty phase of the trial. (RR V:233-34; VI:55, 155; VII:26).  This was especially the case when the State repeatedly pointed to the medical records to claim that Mr. Kennedy had a desire to harm others and, therefore, need to be incapacitated for life. (RR VII:18 ("We ask that you consider the fact that even when he was in the hospital, he said he had the desire to harm others."); VII:26)  therefore, Mr. Kennedy submits they were inadmissible in evidence under Tex. R. Crim. P. 38.23.

## **PRAYER**

For the foregoing reasons, this Court should grant the Petition for Discretionary Review and review the judgment by the Texas Thirteenth Court of Appeals in this case.

Respectfully submitted,


/s/F. Clinton Broden
F. CLINTON BRODEN
TX Bar No. 24001495
Broden, Mickelsen, Helms & Snipes
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594(facsimile)

Attorney for Defendant-Appellant
Michael Patrick Kennedy

20

## CERTIFICATE OF SERVICE

I, F. Clinton Broden, do hereby certify that, on this 30th day of June, 2015, I caused a copy of the foregoing document to be served by first class mail, postage prepaid, on the Chari Kelly, Comal County District Attorney's Office, 150 N. Seguin Avenue, Suite 307, New Braunfels, Texas 78130

/s/ F. Clinton Broden
F. Clinton Broden

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because this brief contains 3,908 words, excluding the parts of the brief exempted by the rule.

/s/ F. Clinton Broden
F. Clinton Broden
Attorney for Appellant

# APPENDIX



NUMBER 13-13-00416-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MICHAEL PATRICK KENNEDY,                                          Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

## On appeal from the 207th District Court
## of Comal County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

Appellant, Michael Patrick Kennedy, was convicted of attempted capital murder, a first-degree felony, and was sentenced to sixty-five years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 15.01, 19.03(a)(1) (West, Westlaw through 2013 3d C.S.). On appeal, he contends: (1) the trial court erred by admitting hospital records; (2) his trial counsel provided ineffective assistance by failing to properly object to the admission of the hospital

records; (3) the trial court erred in instructing the jury that only the jury foreperson could prepare and submit notes to the court; and (4) the trial court erred in failing to define "provocation" in the jury charge. We affirm.[1]

## I. BACKGROUND

On the night of March 3, 2005, police officer Richard Kunz was patrolling Interstate 35 in Schertz, Texas, when he observed Kennedy's vehicle speeding. Kunz activated his emergency lights and pursued Kennedy. Kennedy eventually pulled over to the left shoulder in between the concrete median barrier and the left travel lane. Kunz exited his patrol unit and approached Kennedy. Kunz testified:

> [W]hen I asked him for his driver's license and proof of insurance, I remember seeing his body kind of tilt a little bit to the left and his hand—or a motion that gave me an indication that his hand was going back there to the right, and typical of somebody who would be reaching for their driver's license and insurance and the wallet in the right backhand pocket. While waiting for that documentation is when I saw coming directly from the blackness the barrel of the gun pointed right at me.

Kunz clarified that the gun was pointed at his "upper body." He stated that he thought he was going to die at that point. He "ran for [his] life" back to the patrol unit and called for backup. Kennedy opened his driver's side door and fired at the officer "numerous times" with what Kunz thought was a handgun. Kunz took cover behind his patrol unit. There was then a pause in the shooting, during which Kunz saw what appeared to be the barrel of a rifle "coming out of" Kennedy's driver's side door. He then heard gunshots and glass shattering around him as he crouched behind the patrol unit. He stated that the shots were "definitely [from a] machine gun because they were very rapid and they sounded a

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to an order issued by the Texas Supreme Court. See TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

lot louder than just a handgun." Kunz, having already twice ordered Kennedy to drop his weapon, returned fire. He shot at Kennedy a total of sixteen times, firing until his service weapon was empty. Kunz testified:

> At that point I stayed behind my vehicle, not firing and waiting for cover. I did not know where [Kennedy] was. I did not know if he was still in the vehicle. I did not know if I hit him. I did not know if he was coming around on the side concrete barrier wall and was going to pop up on the side and shoot me. I didn't even really know . . . if he was on the right side of my vehicle and was approaching. And I remained there until the first responding officer arrived.

Police closed off the portion of highway where the incident was occurring and approached Kennedy's vehicle from the opposite side of the concrete median barrier. The officers removed Kennedy, who had multiple gunshot wounds, from his vehicle and placed him under arrest.

Subsequent investigation showed that there were forty-five bullet holes in Kunz's patrol unit; Kennedy had fired at least ten rounds from a nine-millimeter handgun and at least thirty rounds from an AK-47 assault rifle. The handgun and rifle, along with other weapons and ammunition, were recovered from Kennedy's vehicle.

A video recording taken from a camera in Kunz's patrol unit was entered into evidence and played for the jury. On cross-examination, Kunz conceded that he did not tell dispatch or the backup officers that Kennedy had fired at him first. He did not recall Kennedy saying on the video "I have been hit" prior to the time he took cover behind his patrol unit. Kunz agreed that, according to the video recording, he had actually fired on Kennedy from the front of his patrol unit, prior to taking cover and calling for backup, but he did not mention this fact in a six-page written statement he prepared the day after the incident. Kunz agreed that a portion of his written statement was therefore "inaccurate." When asked by defense counsel what he did to correct this "inaccuracy," Kunz replied: "I

3

did not alter my statement or change my report. I let them stand and let the evidence stand for those who wish to look at both and interpret what they believe to be accurate and true."

An acoustics expert and a forensic audio expert each testified on Kennedy's behalf that, according to their analyses of the video recording, Kunz fired the first shot. Dennis McKnight, who testified for the defense as an expert witness in the field of law enforcement, testified that, even if Kennedy displayed a gun when Kunz approached him, Kennedy presented no immediate threat to Kunz at the time Kunz took cover behind his patrol unit. McKnight opined that Kennedy's shooting at Kunz was justified as self-defense.

Kennedy was convicted of attempted capital murder and this appeal followed.[2]

## II. DISCUSSION

### A. Admission of Medical Records

By his first issue, Kennedy contends that the trial court erred by admitting medical records into evidence over his counsel's objection. By his second issue, he argues that, to the extent his trial counsel failed to preserve the objection, he provided ineffective assistance.

---

[2] In 2006, Kennedy pleaded guilty to aggravated assault of a peace officer with a deadly weapon, a first-degree felony, as a result of the events described above. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(A) (West, Westlaw through 2013 3d C.S.). The trial court accepted the plea, adjudicated Kennedy guilty, and sentenced him to seventy-five years' imprisonment. Kennedy appealed, contending that the trial court erred in denying a pre-trial motion to suppress evidence obtained from a police search of his residence. The Austin Court of Appeals held that Kennedy waived error by pleading guilty, but the court of criminal appeals reversed. *Kennedy v. State*, 297 S.W.3d 338, 342 (Tex. Crim. App. 2009) (holding that the evidentiary issue was preserved under Texas Rule of Appellate Procedure 25.2(a)(2) because the State and Kennedy entered into a "charge-bargain agreement" under which the State agreed not to pursue certain charges in exchange for the guilty plea). On remand, the Austin court held that the police search was unconstitutional and ordered a new trial. *Kennedy v. State*, 338 S.W.3d 84, 100–103 (Tex. App.—Austin 2011, no pet.). The new trial, which gave rise to this appeal, took place in June 2013 before a Comal County jury.

4

We review a trial court's evidentiary rulings for abuse of discretion. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). We will uphold the ruling unless it lies outside the zone of reasonable disagreement. *Id.* To obtain a reversal of a conviction for ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

At the conclusion of its case-in-chief, the State sought to admit its Exhibit 77, constituting 107 pages of hospital records documenting Kennedy's injuries resulting from the May 3, 2005 shootout. Defense counsel argued that the records were obtained in violation of the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and were therefore inadmissible. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2013 3d C.S.) (providing that evidence obtained in violation of law is not admissible). The trial court denied the objection.[3] The State contends that the evidence was admissible, that Kennedy failed to preserve error,[4] and that any error in admitting the evidence would be harmless.

[3] Defense counsel also argued that the records were inadmissible because they were not properly authenticated as business records under Texas Rule of Evidence 903. The trial court sustained that objection in part and directed the prosecutor to remove copies of the subpoena and business records affidavit that were erroneously included in the proffered exhibit. The trial court overruled the objection as to the actual medical records themselves. Defense counsel also objected to two pages of the exhibit on grounds that they were protected by the clergy-communicant privilege under Texas Rule of Evidence 505, and to another portion of the exhibit on grounds that they contained statements made by police. The trial court sustained those objections but admitted the remainder of the exhibit. On appeal, Kennedy asserts only that the admitted records were inadmissible because they were obtained in violation of HIPAA.

[4] In particular, the State argues that defense counsel failed to specifically reference the statutory exclusionary rule prior to having his objection overruled. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2013 3d C.S.).

5

Assuming that the issue has been preserved, we find no abuse of discretion in the trial court's ruling. Regulations promulgated under HIPAA provide that "covered entities" such as hospitals generally may not disclose patients' "protected health information" except under certain delineated circumstances. 45 C.F.R. § 164.502(a) (West, Westlaw through 80 FR 26430). Under this "Privacy Rule," one of the circumstances under which protected information may be disclosed without authorization of the patient is when disclosure is "for a law enforcement purpose . . . [p]ursuant to process and as otherwise required by law." *Id.* § 164.512(f) (West, Westlaw through 80 FR 26430). The applicable subsection of the HIPAA Privacy Rule provides as follows:

A covered entity may disclose protected health information:

(i) As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section; or

(ii) In compliance with and as limited by the relevant requirements of:

(A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;

(B) A grand jury subpoena; or

(C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:

(1) The information sought is relevant and material to a legitimate law enforcement inquiry;

(2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and

(3) De-identified information could not reasonably be used.

*Id.* § 164.512(f)(1).

6

The documents at issue here were supplied pursuant to a subpoena duces tecum applied for by the State and issued by a Comal County deputy district clerk. Kennedy argues that court clerks are not considered "judicial officers" for purposes of this regulation, and that subparagraph (ii)(A) of subsection 164.512(f)(1) therefore does not apply. *See United States v. Zamora*, 408 F. Supp. 2d 295, 298 (S.D. Tex. 2006) (holding that, because "there is no support for the government's position that a court clerk is a judicial officer, the government did not properly comply with § 164.512(f)(1)(ii)(A) in its issuance of the subpoena"). Kennedy further cites *State v. Jewell*, wherein it was held that, under HIPAA, the appellant had "a reasonable expectation of privacy" in his medical records, other than his blood-test results, and therefore had "standing to contest how the State obtained them." No. 10-11-00166-CR, 2013 WL 387800, at *4 (Tex. App.—Waco Jan. 31, 2013, no pet.) (mem. op., not designated for publication).

Even though the Comal County district clerk may not be a "judicial officer" for HIPAA purposes, Kennedy does not address whether the records at issue were properly disclosed under paragraph (i) or subparagraph (ii)(C) of the regulation.[5] We find that the records were, indeed, disclosable under these provisions. First, it is undisputed that the

---

[5] In addition to his argument regarding subparagraph (ii)(A), Kennedy principally argues on appeal that subsection (e) of the regulation, which concerns "[d]isclosures for judicial and administrative proceedings," does not apply. *See* 45 C.F.R. § 164.512(e) (West, Westlaw through 80 FR 26430). The State does not dispute that the records at issue were not disclosable under this subsection. *See id.* (providing that, in order for information to be disclosable in the course of a judicial or administrative proceeding, the covered entity must "receive[] satisfactory assurance" that "reasonable efforts have been made" by the party seeking the information (1) to ensure that the individual who is the subject of the requested information "has been given notice of the request" and (2) to obtain a protective order prohibiting the parties from using the information for other purposes and requiring the information to be returned or destroyed at the end of the proceeding). But the fact that the records were not disclosable under subsection (e) does not mean that the records could not have been disclosed under another subsection. *See id.* § 164.512(a) ("A covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law. . . . A covered entity must meet the requirements described in paragraph (c), (e), *or* (f) of this section for uses or disclosures required by law." (emphasis added)).

7

subpoena duces tecum was properly issued by the county clerk at the request of the prosecutor and that it possessed the force of law. *See* TEX. CODE CRIM. PROC. ANN. arts. 24.01, 24.05 (West, Westlaw through 2013 3d C.S.). The hospital was therefore authorized to disclose the records at issue because the disclosure was "required by law." 45 C.F.R. § 164.512(f)(1)(i)[6]; *see Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.— Amarillo 2008, pet. ref'd) (finding that the HIPAA Privacy Rule was not violated when medical records were disclosed pursuant to a lawfully-issued subpoena duces tecum). Second, the subpoena duces tecum appears to meet the requirements of an "administrative subpoena" under subparagraph (ii)(c) in that the information sought was relevant to a legitimate law enforcement inquiry, the request made was reasonably specific and limited in scope,[7] and de-identified information could not have been reasonably used under the circumstances. *See id.* § 164.512(f)(1)(ii)(c). *Jewell* is distinguishable because, in that case, the trial court found and the State conceded that the subpoena used to obtain the documents was invalid due to the fact that it did not comply with applicable statutory requirements. *See* 2013 WL 387800, at *4 (citing TEX. CODE CRIM. PROC. ANN. art. 20.11 (West, Westlaw through 2013 3d C.S.)).

Because disclosure of Kennedy's hospital records pursuant to the subpoena duces tecum was authorized under the HIPAA Privacy Rule, the trial court did not abuse its discretion by admitting the records into evidence. For the same reason, Kennedy's

---

[6] As noted, subparagraph (i) of subsection (f)(1) allows a covered entity to disclose protected health information "[a]s required by law . . . except for laws subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section." *Id.* § 164.512(f)(1)(i). The cited paragraphs, which concern disclosures for "public health activities" and disclosures "about victims of abuse, neglect, or domestic violence" respectively, are not applicable here. *See id.* § 164.512(b)(1)(ii), (c)(1)(i).

[7] The subpoena requested "copies and [sic] any and all medical records relating to Michael Patrick Kennedy, DOB 6/12/1956 . . . admitted on or about 3/4/2005."

8

ineffective assistance of counsel claim is without merit. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (holding that, when claiming ineffective assistance for failing to object, a party must demonstrate that if trial counsel had objected, the trial judge would have committed error in refusing to sustain the objection). We overrule Kennedy's first two issues.

## B.     Instruction Regarding Jury Notes

Kennedy's next two issues argue that the trial court erred by instructing the jury that only the foreperson could write and prepare notes to the court during its deliberations, and by refusing Kennedy's requested instruction that any juror could do so. He complains by his third issue that the rulings violated his Sixth Amendment right to a jury trial and his Fifth Amendment right to due process, *see* U.S. CONST. amends. V, VI, and by his fourth issue that his corresponding rights under the Texas Constitution were violated by the rulings. *See* TEX. CONST. art. I, §§ 10, 19; *id.* art. V, § 13.

The instruction about which Kennedy complains was contained within the guilt-innocence jury charge and states: "When the jury wishes to communicate with the Court, it shall notify the Bailiff, who shall inform the Court thereof. Any communications relative to the case must be written, prepared by the Foreperson and shall be submitted to the Court through the Bailiff." Defense counsel objected to this instruction during the charge conference and orally proposed that the jury instead be instructed that notes could be "prepared by one of your members and shall be submitted to the Court through the bailiff." The trial court denied the objection and requested instruction.

The record in this case does not contain any written communication to the trial court from the jury during its deliberations. Kennedy argues that this could have been

9

because the foreperson refused a juror's request to submit a note, but that it is not possible to determine whether this is so because the rules of evidence prohibit inquiries into the jury's deliberations. *See* TEX. R. EVID. 606(b)(1). He argues that the error should be considered "structural error," and therefore presumed harmful, because "[t]he inability of the eleven other jurors to communicate with the court without essentially seeking the foreperson's permission denies a defendant his right to a unanimous, twelve person jury . . . ." *See Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008) (noting that an error which "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself" and "render[s] a trial fundamentally unfair" is "structural error" which is not amenable to a harm analysis).

The trial court is required to give the jury a written charge "distinctly setting forth the law applicable to the case" and "not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2013 3d C.S.). Trial courts have "broad discretion" in submitting proper definitions and explanatory phrases to aid the jury. *Nava v. State*, 379 S.W.3d 396, 420 (Tex. App.—Houston [14th Dist.] 2012), *aff'd*, 415 S.W.3d 289 (Tex. Crim. App. 2013); *see Shipp v. State*, 331 S.W.3d 433, 444 (Tex. Crim. App. 2011) (Meyers, J., concurring). But a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004).

Here, the trial court's instruction tracked article 36.27 of the code of criminal procedure, which provides:

10

> *When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff.* The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant. . . .

TEX. CODE CRIM. PROC. ANN. art. 36.27 (West, Westlaw through 2013 3d C.S.) (emphasis added). Because the instruction tracked the statute, we conclude that the trial court did not abuse its discretion in including the instruction and denying inclusion of Kennedy's requested instruction.

Kennedy further appears to assert in his reply brief that the statute authorizing the instruction is itself unconstitutional. However, he does not cite any Texas or federal case law to support his position. Instead, he cites only a 1985 case in which the North Carolina Supreme Court held that it was error for the trial court to respond to an inquiry presented by the jury foreperson without requiring the presence of all jurors. *State v. Ashe*, 331 S.E.2d 652, 657 (N.C. 1985). That court held:

> Our jury system is designed to [e]nsure that a jury's decision is the result of evidence and argument offered by the contesting parties under the control and guidance of an impartial judge and in accord with the judge's instructions on the law. All these elements of the trial should be viewed and heard simultaneously by all twelve jurors. To allow a jury foreman, another individual juror, or anyone else to communicate privately with the trial court regarding matters material to the case and then to relay the court's response to the full jury is inconsistent with this policy. The danger presented is that the person, even the jury foreman, having alone made the request of the court and heard the court's response firsthand, may through misunderstanding, inadvertent editorialization, or an intentional misrepresentation, inaccurately relay the jury's request or the court's

11

response, or both, to the defendant's detriment. Then, each juror, rather than determining for himself or herself the import of the request and the court's response, must instead rely solely upon their spokesperson's secondhand rendition, however inaccurate it may be.

*Id.* Kennedy appears to contend that article 36.27 of the code of criminal procedure subjects defendants to a similar risk of "misunderstanding, inadvertent editorialization, or intentional misrepresentation" on the part of the foreperson.

Defense counsel did not explicitly contend at trial that the statute is unconstitutional; in fact, no mention was made at all of the statute during the charge conference. *See* TEX. R. APP. P. 33.1; *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (noting that "even constitutional error . . . may be forfeited if the appellant failed to object"). Even assuming this issue was preserved by counsel's general objection to the constitutionality of the instruction, we do not find error in the trial court's decision. *Ashe* is not persuasive because that case involved a discussion between the trial court and the jury foreperson outside of the presence of the rest of the jury, not a statute requiring jury notes to be directed through the foreperson. *See* 331 S.E.2d at 657. Moreover, the *Ashe* court found that a North Carolina statute was violated by the trial court's actions, but did not pass judgment on whether the appellant's constitutional rights were violated. *See id.* In the absence of any other authority supporting Kennedy's position, we do not find it meritorious.

Kennedy's third and fourth issues are overruled.

## C.   Definition of "Provocation"

By his fifth and final issue, Kennedy contends that the trial court erred in refusing his request to include a particular definition of "provocation" in the jury charge.

12

Provocation is an exception to the justification of self-defense.[8]  *See* TEX. PENAL

CODE ANN. § 9.31(b)(4) (West, Westlaw through 2013 3d C.S.) (providing that self-

defense generally does not justify the use of force "if the actor provoked the other's use

or attempted use of unlawful force").  During the charge conference, defense counsel

proposed the following instruction:

> Provocation is defined as, one, that the defendant did some act or used
> some words which provoked the act on him . . .  Two, that such acts or
> words were reasonably calculated to provoke the attack, and, three, that the
> act was done or words were used for purpose and with the intent that the
> defendant would have a pretext for inflicting harm upon others.

Counsel argued that the proposed instruction was necessary because the State's theory

was that it was irrelevant whether Kennedy fired first because, even if he did not, he

provoked Kunz's actions.  The proposed instruction is drawn from *Smith v. State*, in which

the Texas Court of Criminal Appeals explained when "[a] charge on provocation is

required."  965 S.W.2d 509, 513 (Tex. Crim. App. 1998) ("A charge on provocation is

required when there is sufficient evidence (1) that the defendant did some act or used

some words which provoked the attack on him, (2) that such act or words were reasonably

calculated to provoke the attack, and (3) that the act was done or the words were used

---

[8] The jury was instructed as follows:

If a person attempting to claim self-defense provoked the other's use of unlawful force or attempted use of unlawful force, then such person is not entitled to rely upon self-defense, unless the person: a) abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter, and b) the other nevertheless continues or attempts to use unlawful force against the person.

. . . .

[I]f you find from the evidence beyond a reasonable doubt that at the time and place in question that the Defendant provoked Richard Kunz's use or attempted use of unlawful deadly force if any by pointing a firearm at the said Richard Kunz, then you should find against the Defendant on the issue of self-defense and say by your verdict "guilty."

We assume, for purposes of this opinion, that these instructions were supported by the evidence and therefore properly included in the jury charge.

13

for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.").

The State contends in response that the trial court did not err in refusing the instruction because it would have constituted an impermissible comment on the weight of the evidence. It cites *Kirsch v. State*, where the court of criminal appeals stated:

> Although an appellate court may articulate a definition of a statutorily undefined, common term in assessing the sufficiency of the evidence on appellate review, a trial court's inclusion of that definition in a jury charge may constitute an improper comment on the weight of the evidence. . . .
>
> We have generally held that, if a jury-charge instruction is not derived from the penal code, it is not "applicable law" under [article] 36.14. With only limited exceptions, the trial court may not include an instruction that focuses the jury's attention on a specific type of evidence that may support a finding of an element of an offense. Juries are free to consider and evaluate the evidence in whatever way they consider it relevant to the statutory offenses, and special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge.

357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (citing *Walters v. State*, 247 S.W.3d 204, 211, 212, 214 (Tex. Crim. App. 2007)). In *Kirsch*, the Court held that an instruction on the definition of "operate" in a driving while intoxicated case was improper because, while "the definition set forth in the charge is an appropriate definition for an appellate court to apply in assessing the sufficiency of the evidence to support the 'operate' element," the jurors "should have been free to assign that term any meaning which is acceptable in common parlance." *Id.* (quotation omitted). *Kirsch* relied on *Walters*, which held that:

> [G]enerally speaking, neither the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense.

247 S.W.3d at 212.

14

We note that the requested instruction is not grounded in the penal code, but the content of the instruction is not "covered by the general charge to the jury," *see id.*, because the charge did not contain any general definition of "provoke" or "provocation." Further, the proposed instruction would not have "focuse[d] the jury's attention on a specific type of evidence that may support an element of an offense or a defense." *See id.* Instead, it would have merely incorporated existing case law, as elucidated in *Smith*, into the instruction regarding the self-defense justification.

The State contends that "'provocation' is a term of common usage" and therefore did not require a precise definition. But the court of criminal appeals, in *Smith*, defined "provocation" in a specialized manner applicable only to assertions of the self-defense justification in criminal proceedings. *See* 965 S.W.2d at 513. Though jurors may "freely read [undefined] statutory language to have any meaning which is acceptable in common parlance," terms "which have acquired a peculiar and appropriate meaning in the law" are "considered as having been used in their technical sense." *Kirsch*, 357 S.W.3d at 650 (citing *Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000); *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)).[9] Under *Smith*, a trial court need not instruct the jury on "provocation" at all unless there is evidence that the defendant's actions or words were "reasonably calculated to provoke the attack" and "were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon another." *Id. Kirsch* is distinguishable because there was no controlling case law dictating

---

[9] Statutorily undefined words and phrases are ordinarily "construed according to the rules of grammar and common usage." *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012) (quoting TEX. GOV'T CODE ANN. § 311.011(a) (West, Westlaw through 2013 3d C.S.) and citing TEX. PENAL CODE ANN. § 1.03(b) (West, Westlaw through 2013 3d C.S.) (applying government code section 311.011 to the penal code)). But "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011(b).

15

any particular definition of "operate." *See Kirsch*, 357 S.W.3d at 648 (noting that the charged definition of "operate" was, according to defense counsel, "made up by the prosecutor himself").

In any event, assuming but not deciding that the trial court erred in refusing Kennedy's requested instruction, we find that Kennedy has not suffered harm as a result of the ruling. When the appellant has properly preserved charge error, as here, reversal is required if we find at least "some harm" to the appellant's rights. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). This analysis requires a reviewing court to consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record. *Id.*

We first observe that, because the legal definition of "provocation" was omitted from the jury charge, the jury's ability to conclude that Kennedy's actions were justified as self-defense was restricted. That is because the legal, technical definition of provocation is far more restrictive than common, dictionary meaning. The dictionary defines "to provoke" as "to incite to anger" or "to stir up purposely." MERRIAM WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/provoke (last visited June 9, 2015). On the other hand, as noted, the legal definition of provocation requires acts or words on the part of the defendant that are "used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon another." *Smith*, 965 S.W.2d at 513. Kennedy points out that the State emphasized his alleged provocation of Kunz in its closing argument at the guilt-innocence phase of trial. In particular, the prosecutor

16

argued that Kennedy "started it when he pointed that gun at Officer Kunz." The prosecutor also stated:

> [W]ho shot first in this case is about as important as what type of car the defendant was driving that night. Okay? It is not important because the moment that the defendant picked up a firearm and pointed it at a police officer, he forfeited the right to claim self-defense. He forfeited the right to claim self-defense when he continuously fired 45 shots into that officer's police car, ladies and gentlemen.

The prosecutor concluded her closing argument by stating: "When you go back there, I ask that you find the defendant guilty of attempted capital murder because when you pull a gun on a police officer, you do not get to claim self-defense. You have provoked the event. Thank you."

In response, the State contends that any error in the jury charge is harmless because "there was overwhelming evidence that [Kennedy] provoked the encounter." We agree. We note that there was some discussion at the charge conference about a "suicide-by-cop" theory; i.e., that Kennedy may have pulled his gun on the officer intending only to provoke the officer to fire at him. The trial court denied Kennedy's requested instruction in part because the court believed that suicide-by-cop "could be a well-argued theory of this case." The trial court was incorrect, however, in light of *Smith*. If Kennedy did indeed pull his gun on Kunz with only the intent to commit suicide-by-cop, then his actions would not constitute "provocation" as defined in *Smith* because he would not have possessed the intent to establish a pretext to attack the officer. *See id.* Nevertheless, Kennedy directs us to no evidence or argument specifically supporting a suicide-by-cop theory, and we find none.[10] Instead, the undisputed evidence showed that

---

[10] According to the prosecutor, one of the medical records excluded on the basis of the clergy-communicant privilege stated that "[t]his incident was another attempt, according to the patient, to cause injury to himself." But as noted, the trial court sustained defense counsel's objection to this evidence and

17

Kennedy fired forty-five rounds at Kunz, which strongly supports a conclusion that, by brandishing his weapon, Kennedy intended to establish a pretext to attack Kunz. Accordingly, even if the jury had been instructed in accordance with *Smith*, it is overwhelmingly likely that it would have reached the same conclusion as to the self-defense issue.

Having reviewed the entire record, including the entire jury charge and arguments made by counsel, we conclude that Kennedy has not suffered any actual harm from the omission of his requested definition from the jury charge. *See Reeves*, 420 S.W.3d at 816. Kennedy's fourth issue is therefore overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of June, 2015.

---

it was never before the jury.

18